■ In the Matter of DOMINIC MORLANDO, Respondent, v JUDY A. MORLANDO, Appellant. [659 NYS2d 108] —Casey, J. Appeal from an order of the Family Court of Broome County (Hester, Jr., J.), entered October 6, 1994, which, *inter alia*, granted petitioner's application, in a proceeding pursuant to Family Court Act article 6, to relocate with the parties' children to another State.

The parties, who were divorced in 1989, have two children, Vincent (born in 1986) and Jessica (born in 1987). Although respondent had physical custody of the children upon the parties' divorce, the children went to live with petitioner sometime in 1993. From that time until petitioner commenced this proceeding in February 1994 requesting permission to relocate with the children to North Carolina, visitation with respondent was either suspended by Family Court or supervised visitation was ordered. A hearing was ultimately held in

September 1994, after which Family Court granted petitioner's application finding that exceptional circumstances existed to warrant petitioner's relocation. Respondent now appeals.

We initially note that in arriving at its determination, Family Court used the three-tiered analysis formerly applied in relocation cases. The Court of Appeals, however, has since abandoned this approach and has instead enunciated a new standard where "each relocation request must be considered on its own merits with due consideration of all the relevant facts and circumstances and with predominant emphasis being placed on what outcome is most likely to serve the best interests of the child" (*Matter of Tropea v Tropea*, 87 NY2d 727, 739). These factors include, but are not limited to, "the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and the child through suitable visitation arrangements" (*id.*, at 740-741). As the record is sufficiently developed, it is appropriate for us to apply the analysis set forth in *Matter of Tropea v Tropea* (*supra*) to these circumstances (*see, Matter of Harder v Yandoh*, 228 AD2d 814, 816).

It is clear from the record that respondent has a troubled relationship with her children. The testimony revealed that, pursuant to a July 1994 order, a supervised visit was held between respondent and the children on August 1, 1994. This was the first time they had been together in about a year, in part due to respondent's own conduct. Although this visit seemed to go well, the children refused to meet with respondent again, claiming that they had nightmares and were afraid that respondent would come and get them. At the time of the proceeding, the children were in counseling to deal with these fears and anxieties, which originated in part from incidents that occurred while the children resided with respondent. At the time of the hearing, respondent was not working and she was receiving public assistance. In addition, she was in an intensive outpatient rehabilitation program for her past problems with alcohol. Respondent has made progress in the program in that she is learning to deal with her anger and, as of the September 1994 hearing, has stayed free from alcohol and drugs.

The children's relationship with petitioner is excellent and they have benefitted greatly since they have moved in with

him, his wife and her son, who petitioner has adopted. Petitioner has been unemployed since his father's construction business closed in February 1994, having been unsuccessful in his continued search in the area for permanent work in the same position with a similar salary. He presented evidence, however, of the numerous construction opportunities available to him in North Carolina (which, unlike Broome County, is experiencing a construction boom), including an offer of employment as a field supervisor, the position that he held with his father's company. Furthermore, petitioner has given much thought to the effect of the move on the children and his thorough research of the area where he intends to live indicates the availability of a high quality of educational as well as recreational opportunities.

The children are also very involved with petitioner's extended family, many of whom currently reside near where petitioner intends to live and who have indicated their availability to care for them should the need arise. The only member of respondent's family with whom the children have a constant and positive relationship is respondent's father. He testified, however, that he is trying to sell his house and will most likely move away. Petitioner has also demonstrated a commitment to preserving the relationship between respondent and her children through suitable visitation arrangements. In this regard petitioner has agreed to transport the children, at his expense, to Broome County at least four times a year for extended visits during the children's school vacations. In these circumstances, we conclude that not only will the children's lives be enhanced both economically and emotionally by the move to North Carolina, but relocation will serve the children's best interests.

Finally, we reject respondent's contention that she was deprived of the effective assistance of counsel. Not only was her counsel's representation reasonably competent and therefore meaningful (*see, Matter of Williams v MacDougall,* 226 AD2d 782, 783), but there is no indication that the hearing was a " 'farce [and a] mockery of justice' " (*Matter of De Vivo v Burrell,* 101 AD2d 607, 608, quoting *People v Baldi,* 54 NY2d 137, 146).

Mercure, J. P., Peters, Spain and Carpinello, JJ., concur. Ordered that the order is affirmed, without costs.